IRIZARRY, CH.J.

SCANLON, M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------
PATRICIA ANYACHEBELU

CV 16            Index No.:       3159

Plaintiff,                                    **COMPLAINT**

**JURY TRIAL DEMANDED**

-against-

BROOKLYN HOSPITAL CENTER,
Ms. INGRID SPEARS, Ms. MAKEDA PINNOCH,
Ms. HEALY RODRIGUEZ, TRUSTEES OF THE NEW
YORK STATE NURSES ASSOCIATION BENEFITS FUND

Defendants,
------------------------------------------------------x

     Plaintiff, Patricia Anyachebelu, by and through her attorneys, Ofodile & Associates, P.C.,

complaining of the Defendants, Brooklyn Hospital Center, Ms. Ingrid Spears, Makeda Pinnoch,

Ms. Healy Rodriguez, and Trustees of the New York State Nurses Association Benefits Fund,

alleges as follows:

### NATURE OF ACTION

    1.    This is an action for damages sustained by Plaintiff as a result of Defendants'

failure to give Plaintiff timely notice of the termination of her health insurance and her rights as

guaranteed under the Consolidated Omnibus Budget Reconciliation Act of 1983 (COBRA) as

well as under the Civil Rights Act of 1866, as amended, 42 U.S.C., section 1981, to remedy race

discrimination.

    2.    This is also an action for damages caused by Defendants' discrimination against the

Plaintiff on the basis of her age, national origin and race and in retaliation for complaining about

what she honestly believed to be disparate treatment in violation of New York State Executive

1

Law, section 296 (Human Rights Law) and New York City Administrative Code, section 8, *et seq.*,

## JURISDICTION AND VENUE

3.     Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. §1331, this being an action arising out of the Constitution and Federal Law, and by 28 U.S.C. § 2617.  The Court has supplemental jurisdiction over Plaintiff's claims brought under New York State Human Rights Law and New York City Administrative Code.

4.     Venue is proper in the Eastern District of New York because the events complained of occurred in Kings County, which is within the Eastern District of New York.

## PARTIES

5.     At all times relevant and material to this action, Plaintiff Patricia Anyachebelu was a citizen of the United States of America residing in Queens County, New York, within the jurisdiction of this Court.

6.     During all times relevant and material to this action, Defendant, The Brooklyn Hospital Center, was, and upon information and belief still is a corporation incorporated under the laws of the State of New York.

7.     During all times relevant and material to this action, Defendant, Ms. Ingrid Spear was an employee of The Brooklyn Hospital Center.

8.     During all times relevant and material to this action, Defendant, Ms. Makeda Pinnoch was an employee of the Brooklyn Hospital Center.

9.     During all times and relevant and material to this action, Defendant, Ms. Healy Rodriguez was an employee of the Brooklyn Hospital Center.

2

10.     At all times relevant and material this case, Trustees of the New York State Nurses Association Benefits Fund (TNYSNABF) is the Plan Administrator of the New York State Nurses Association responsible for administering the COBRA benefits for Brooklyn Hospital Center's nursing employees such as Plaintiff.

## FACTUAL ALLEGATIONS

11.     Plaintiff Patricia Anyachebelu was at all times relevant and material to this case 48 years old, Black, and of Nigerian national origin. She worked for Brooklyn Hospital Center for 18 years and carried out her duties in the most diligent manner before her employment was terminated.

12.     On September 30th, 2014, Defendant Ms.Ingrid Spears had a meeting with 4W nurses where she talked about how "old nurses" like Plaintiff come to work and they do not do anything but go sleep.

13.     As a result of this belief, Ms. Spears went on a mission to get rid of the "old nurses" as well as Nigerian nurses whom she also disliked.

14.     Ms. Spears singled out the Plaintiff and another Nigerian nurse named Adaogu, treated them differently from the way she treated other nurses, including, but not limited to 3 Spanish nurses similarly situated to the Plaintiff.

15.     Simply courtesies extended to other nurses were not extended to Plaintiff by Ms. Spears because of her age and national origin. For example, Plaintiff had asked Ms. Spears for a day off to attend her daughter's game, a game that meant so much to both Plaintiff and her daughter being that Plaintiff's husband had just passed away.

3

16.     Plaintiff tried to explain to Ms. Spears that she would not have bothered her if things were not the way they were. Ms. Spears told Plaintiff that she was not the only single parent and that she (Ms. Spears) had been single for a long time, therefore, that Plaintiff should deal with it although such courtesies were extended to other nurses.

17.     As part of her effort to carry out her planned termination of Nigerians and/or older nurses, Ms. Spears got an Aid to "take a picture" of someone and to superimpose Ms. Adaogu's picture unto it to get Ms Adaogu terminated for allegedly sleeping on duty.

18.     Ms. Spears did this in order to back up her claim that old nurses come work and do nothing but sleep. Ms. Spears colluded to fabricate this claim because she wanted to get rid of the "old nurses" and Nigerian nurses and she had to come up with a reason to do so.

19.     Ms. Spears ploy did not work out however, because  this was found out during Arbitration and the Aide that "took" this picture was fired.

20.     When Plaintiff complained about the way she was being treated Ms. Spears retaliated against her and eventually caused her employment to be terminated for pretextual reasons.

21.     It is the practice at the Brooklyn Hospital Center for nurses to switch their vacation periods based on their needs and/or to switch shifts.

22.     Plaintiff switched vacation periods which were already pre-approved to take place in January, February, and March 2014, with a Hispanic Nurse and an Asian Nurse.

23.     The Hispanic nurse took her vacation in January, 2014, based on the switch with no complaints or incidents from Ms. Spears and Plaintiff was supposed to take her vacation in February and was scheduled to travel to Nigeria.

4

24.     Ms. Spears being Plaintiff's immediate supervisor, needed to sign off on the approval before Plaintiff could travel.

25.     Despite the fact that the vacation had been pre-approved and that the Hispanic nurse had taken her vacation and that the Asian nurse was scheduled to take her vacation in March without any objection, Ms. Spears still did not sign off on Plaintiff going on this vacation in accordance with the switch agreed to by the nurses but insisted that if Plaintiff were to travel, the time off would not be paid as vacation time.

26.     Plaintiff called the attention of the  Director of Nursing, Ms. Smith, to this difference in treatment being meted out to Plaintiff and Ms. Smith advised Ms. Spears that there was no reason for the denial of the vacation since it had already been approved and directed Ms. Spears to let the Plaintiff go on vacation.

27.     Ms. Spears only allowed the Plaintiff to take this vacation after their Director Ms. Smith got involved but was very unhappy that she was overruled by Ms. Smith..

28.     Ms. Spears did not stop her discriminatory treatment of Plaintiff after this incident.

29.     Ms Spears discriminated against Plaintiff again during the first week of October 2014 because of her age and national origin and also retaliated against her for again complaining about the treatment she meted to Plaintiff.

30.     At this time, a day shift position had opened up and Plaintiff declared interest in this position. Plaintiff was interested in this day shift position because she had just lost her husband, her mother who had come to visit them was leaving and Plaintiff had no one else to take care of her daughter at night while she was at work.

5

31.     Defendant Ms. Spears refused to sign Plaintiff's form to be transferred  to the day

shift and because Plaintiff had seniority and would receive the position if posted, refused to post

position.

32.      Ms Spears neither signed the form nor posted the position because Plaintiff had

declared interest in the position, and wanted to take the shift.

33.     When Ms. Spears neither signed the said form nor posted the position, it made it

impossible for plaintiff to apply for the position.

34.     Considering Plaintiff's dire need to move to the day shift, Plaintiff  explained to

her Director (Ms. Smith) how important it was for her to be transferred to the day shift, being a

widow and having no one to look after her daughter at night and that after she expressed interest

in the position, Ms Spears refused to sign the transfer form and also refused to advertise the

position so that Plaintiff would apply and receive the position based on her seniority.

35.     Two days after Plaintiff's conversation with the Director, Ms. Spears confronted

the Plaintiff and asked her why she went to her supervisor to report her. Plaintiff told Ms. Spears

that she only explained  her situation to the Director.

36.     Ms. Spears was not happy about this and  she warned the Plaintiff, telling her, " be

careful what you ask for".

37.     Ms. Spears was forced to approve the transfer from night shift to day shift. Upon

approval, Plaintiff  was to go to the day shift the following day.

38.     Ms. Spears was not happy about Plaintiff moving to the day shift, and continued

her discriminatory treatment of Plaintiff and also began her retaliatory action against the Plaintiff.

39.     The night before the Plaintiff was to begin her day shift, Plaintiff had two deliveries. The first baby was delivered by 9:12 p.m.

40.     After the delivery of this baby, Plaintiff put the cord blood and an identifier in an envelope, put the mother's name and medical record number in a bag and was on her way to complete the paperwork when she was required to begin another delivery before she could complete the record keeping process associated with the first delivery.

41.     Another nurse offered to complete the process so that Plaintiff could attend to the second delivery as the doctor was already waiting for her to begin the delivery on the other patient who was already fully dilated.

42.     Plaintiff handed the bag over to the nurse who offered to put the label on the identifier before going to deliver the second baby.

43.     The second baby was delivered at 10:42 p.m. After this delivery, Plaintiff completed the record keeping process in accordance with hospital procedures.

44.     Unbeknown to Plaintiff, the nurse that she had handed the cord blood bag and mother's information to so that she would put a label on the identifier for the first delivery and complete the paperwork for that delivery had not done so by the time Plaintiff completed the necessary paperwork on the second birth and her failure to timely complete the paperwork caused a cord blood error as this nurse mixed up the second delivery with the first when she finally completed the paperwork.

45.     Upon information and belief, there was no reason for the other nurse to not affix the label already pre-printed and enter the information in the system before Plaintiff completed the second delivery.

7

46.    Although the nurse that caused the cord blood error admitted that Plaintiff gave her the label to affix with the cord blood and went to deliver the second baby, Defendants, including Ms. Spears, did not discipline the nurse that caused this error.

47.    Plaintiff's employment was terminated for this error that she did not commit and which was caused/committed by another nurse who was younger and not of Nigerian national origin. This younger nurse who is not Nigerian that committed this error was not even given any punishment for same.

48.    The termination of Plaintiff's employment for the cord blood error was a pretext for discrimination and/or retaliation as Defendants, other than giving a verbal or written warning on some occasions (while on others not even doing anything)  had never terminated the employment of another nurse for such violation.

49.    Plaintiff was previously suspended for two days by Ms. Spears for her first cord blood error while on the occasions when Ms Spears actually documented other nurses' cord blood errors, she only gave them a verbal or written warning.

50.    Plaintiff was suspended for two days for an error for which Defendants did not suspend non-Nigerians or younger nurses because of her national origin and/or her age.

51.    Plaintiff's termination was vacated in an Arbitration Award and Plaintiff was ordered reinstated to her job but instead of returning her to her Unit where she had 18 years of practical experience in addition to graduate degrees in, Defendants transferred Plaintiff to a Unit where she had no training or experience and where she would become a completely new nurse.

52.    In order to frustrate Plaintiff and constructively discharge her, Defendants moved Plaintiff to Medicine Unit 7, from  7:00 p.m. - 7:00 a.m., in total disregard of Plaintiff's training,

8

qualifications, experience and, her need for a morning shift which she had obtained based on her seniority and which she was to begin the day before she was terminated for a cord blood error she did not commit.

53.     Defendants knew that Plaintiff did not have any experience in this Unit they moved her to and all of Plaintiff's entreaties to be moved to any area where she had training and experience were totally ignored.

54.     Besides the Labor and Delivery Unit, the Hospital has the following units: Mother-Baby;  NICU, Nursery, Pediatrics, and Pediatric ICU; all units where Plaintiff's eighteen years of work for the Brooklyn Hospital and her graduate degree/s and or specialization would all have come to bear and any of which she was willing to be transferred to and work in in order to keep her job.

55.     But instead, Defendants moved Plaintiff to a department where she had no training or experience in a bid to set her up for errors and mistakes so that they would have reason to terminate her employment and also to a shift that she could not continue to work in light of her need to be at home at night with her child, causing the constructive termination of Plaintiff's employment.

56.     Defendants discriminated against the plaintiff based on race, age, national origin, and retaliated against her, punished her for an error that she did not commit while sparing the nurse that actually committed the said error, and admitted that she did commit the error, failed to timely notify her of the termination of her health benefits and thereby caused her to loose her health insurance.

9

57.     When the cord blood error was committed by another nurse, Plaintiff was initially suspended - indefinite suspension before she was eventually terminated.

58.     When Plaintiff was eventually terminated, she did not get timely notice of her termination and the termination of her health insurance so that she would make arrangements for alternative means of insurance to cover herself and her family.

59.     Upon information and belief, Brooklyn Hospital Center failed to give the Plan Administrator of the COBRA benefits, the Trustees of the New York State Nurses Association Benefits Fund (TNYSNABF) notice within 30 days of Plaintiff's termination in violation of COBRA, *29 U.S.C. § 1166*

60.     Defendant  TNYSNABF was the Administrator of Brooklyn Hospital Center's COBRA benefits plan and upon information and belief, failed to given Plaintiff notice of her rights under the benefit plan within 14 days of being notified of Plaintiff's termination.

61.     As a result of Brooklyn Hospital Center and TNYSNABF's failure to provide Plaintiff with the required statutory notices in accordance with the provisions of the law, and failure to provide Plaintiff with timely notice, Plaintiff lost health care coverage for herself and her family and incurred substantial medical bills while believing that she had health insurance coverage.

62.     Plaintiff lost her health insurance and by the time she was eventually notified of the lack of coverage, she could not apply for health insurance under the Affordable Care Act, (ACA) because the deadline had already passed.

63.     Plaintiff having lost her health insurance was forced to pay $17,000.00 out of pocket to cover the medical bills for her son's injury and also had to expend more for bills

10

incurred due to her own care.

64.      Defendants discriminated against the plaintiff based on race, age, national origin, retaliated against her, punished her for an error that she did not commit while sparing the nurse that actually committed the said error, and admitted that she did commit the error, failed to timely notify the Plaintiff of the termination of her health insurance and of her rights under COBRA and thereby caused her to loose her health insurance and suffer consequential damages.

65.      As a direct consequence of Defendants' actions, Plaintiff suffered and still suffers emotionally, psychologically, and financially.

## AS FOR THE FIRST CAUSE OF ACTION

66.      Plaintiff repeats and re-alleges paragraphs 1 through 65 as if each paragraph is repeated verbatim herein.

67.      Defendants discriminated against the Plaintiff on the basis of her national origin in violation of The New York City Civil Rights Law section 8 et seq., when they suspended her for two days for a cord blood error when similarly situated nurses who were not of Nigerian national origin were not suspended.

## AS FOR THE SECOND CAUSE OF ACTION

68.      Plaintiff repeats and re-alleges paragraphs 1 through 67 as if each paragraph is repeated verbatim herein.

69.      Defendants discriminated against the plaintiff on the basis of her national origin in violation of The New York State Executive Law section 296, et seq., when they suspended her for two days for a cord blood error when similarly situated nurses who were not of Nigerian national origin were not suspended.

11

## AS FOR THE THIRD CAUSE OF ACTION

70.     Plaintiff repeats and re-alleges paragraphs 1 through 69 as if each paragraph is repeated verbatim herein.

71.     Defendants discriminated against the Plaintiff on the basis of her age in violation of The New York City Civil Rights Law, section 8 et seq., when they suspended her for two days for a cord blood error when similarly situated nurses who were substantially younger than Plaintiff were not suspended.

## AS FOR THE FOURTH CAUSE OF ACTION

72.     Plaintiff repeats and re-alleges paragraphs 1 through 71 as if each paragraph is repeated verbatim herein.

73.     Defendants discriminated against the Plaintiff on the basis of her age in violation of The New York State Executive Law section 296, et seq., (Executive Law) when the Hospital Defendants suspended her for two days for a cord blood error when similarly situated nurses who were substantially younger than Plaintiff were not suspended.

## AS FOR THE FIFTH CAUSE OF ACTION

74.     Plaintiff repeats and re-alleges paragraphs 1 through 73 as if each paragraph is repeated and re-alleged verbatim herein.

75.     Hospital Defendants suspended Plaintiff for two days for a cord blood error, a punishment never meted out to any other nurse in her unit in retaliation for her complaining about what she honestly believed to be discriminatory treatment and in some cases, getting the superiors to take corrective action and thereby violated The New York State Executive Law and the New York City Civil Rights Law each of which prohibits retaliation for the exercise or

12

attempted exercise of protected rights..

## AS FOR THE SIXTH  CAUSE OF ACTION

76.        Plaintiff repeats and re-alleges paragraphs 1 through 75 as if each paragraph is repeated verbatim herein.

77.        Defendants discriminated against the plaintiff on the basis of her national origin and/or  race violation of  The New York City Civil Rights Law section 8 et seq., and 42 U.S.C., section 1981, when they terminated her employment based on the error committed by another nurse who admitted to them that she committed said error while not disciplining the nurse that committed the error.

## AS FOR THE SEVENTH CAUSE OF ACTION

78.        Plaintiff repeats and re-alleges paragraphs 1 through 77 as if each paragraph is repeated verbatim herein.

79.        Defendants discriminated against the plaintiff on the basis of her national origin violation of  The New York State Executive Law section 296, et seq., when they terminated her employment based on the error committed by another nurse who admitted to them that she committed said error while not disciplining the nurse that committed the error.

## AS FOR THE EIGHT CAUSE OF ACTION

80.        Plaintiff repeats and re-alleges paragraphs 1 through 79 as if each paragraph is repeated verbatim herein.

81.        Defendants discriminated against the Plaintiff on the basis of her age in violation of  The New York City Civil Rights Law section 8 et seq., when they terminated her employment based on the error committed by another nurse who admitted to them that she committed said

13

error while not disciplining the nurse that committed the error.

## AS FOR THE NINTH CAUSE OF ACTION

82.     Plaintiff repeats and re-alleges paragraphs 1 through 82 as if each paragraph is repeated verbatim herein.

83.     Defendants discriminated against the Plaintiff on the basis of her age in violation of The New York State Executive Law section 296, et seq., (Executive Law) when the Hospital Defendants terminated her employment based on the error committed by another nurse who admitted to them that she committed said error while not disciplining the nurse that committed the error.

## AS FOR THE TENTH CAUSE OF ACTION

84.     Plaintiff repeats and re-alleges paragraphs 1 through 83 as if each paragraph is repeated and re-alleged verbatim herein.

85.     Hospital Defendants terminated Plaintiff's employment based on the error committed by another nurse who admitted to them that she committed said error while not disciplining the nurse that committed the error in retaliation for Plaintiff complaining about what she honestly believed to be discriminatory treatment and in some cases, getting the superiors to take corrective action.

86.     In terminating Plaintiff's employment as aforementioned, Defendants violated the New York State Executive Law and the New York City Civil Rights Law, and 42 U.S.C., section 1981 which all forbid retaliation for complaining, exercising, or attempting to exercise the rights guaranteed and/or protected by the respective statutes.

14

## AS FOR THE ELEVENTH CAUSE OF ACTION

87.     Plaintiff repeats and re-alleges paragraphs 1 through 86 as if each paragraph is repeated verbatim.

88.     Defendant Brooklyn Hospital Center violated COBRA provisions when it failed to provide the Plan Administrator, TNYSNABF with notice of Plaintiff's termination within 30 days of the termination of Plaintiff's employment.

89.     As a result of the said failure, Plaintiff suffered actual damages in the tune of more than twenty thousand dollars and is also is entitled to statutory damages as provided for by COBRA and codified under ERISA.

## AS FOR THE TWELFTH CAUSE OF ACTION

90.     Plaintiff repeats and re-alleges paragraphs 1 through 89 as if each paragraph is repeated verbatim.

91.     Plan Administrator (TNYSNABF) of Brooklyn Hospital's benefit plans failed to provide Plaintiff with notice of Plaintiff her rights to benefit under COBRA within 14 days of being notified of Plaintiff's termination.

92.     As a result of the said failure, Plaintiff suffered actual damages in the tune of more than twenty thousand dollars and also is entitled to statutory damages as provided under COBRA and cord ified under ERISA.

## AS FOR THE THIRTEENTH CAUSE OF ACTION

93.     Plaintiff repeats and re-alleges paragraphs 1 through 92 as if each paragraph is repeated verbatim.

94.     Defendants constructively terminated Plaintiff's employment by moving her to

15

Medicine Unit 7B, a department that she did not have experience in so that she would make mistakes and they would have a reason to terminate her employment.

95. The discrimination and/or retaliation that the Hospital Defendants subjected Plaintiff to forced Plaintiff to abandon her job and Defendant Hospital is therefore liable for the constructive discharge of plaintiff and attendant damages in lost wages in violation of both the New York State Executive Law and the New York City Civil Rights Law as well as under 42 U.S.C., section 1981.

**WHEREFORE,** Plaintiff demands judgement against the defendants, jointly and severally:

      i.    Awarding Plaintiff general compensatory damages for the emotional distress damages she sustained as a result of the Defendants' discriminatory and retaliatory actions, in the amount to be prove at trial and in accordance with proof;

      ii.    Awarding plaintiff punitive damages in an amount sufficient to punish Defendants and deter others like them from repeating such unlawful actions;

      iii.    Awarding specific damages in the amount Plaintiff expended so far in medical bills and statutory damages as provided under COBRA;

      iv.    Awarding Plaintiff back wages and front wages in the amount to be proved at trial and in accordance with proof;

      v.    Awarding Plaintiff attorneys fees, costs and disbursement of this lawsuit in accordance with proof;

      vi.    Granting Plaintiff such other relief/s Plaintiff will be shown to be entitled to at trial and in accordance with proof.

16

Dated: Brooklyn, New York
           June 15, 2016

                                           OFODILE & ASSOCIATES, P.C.
                                           Attorneys for Plaintiff Patricia Anyachebelu

                                           By:
                                                 Anthony C. Ofodile, Esq.
                                                 498 Atlantic Avenue
                                                 Brooklyn, New York 11217
                                                 718 852-8300
                                                 ACOfodile@aol.com

17